**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**PETER C. LOMTEVAS,**

                                   **Plaintiff,**

    vs.                                             **1:25-CV-1067**
                                                    **(MAD/PJE)**

**CITY OF SCHENECTADY; MAXINE L.**
**BARASCH,** *Corporation Counsel, City of*
*Schenectady***; and GARY R. MCCARTHY,**
*Mayor, City of Schenectady***,**

                                   **Defendants.**

---

APPEARANCES:                                     OF COUNSEL:

**PETER C. LOMTEVAS, ESQ., P.C.**     **PETER C. LOMTEVAS, ESQ.**
660 State Street, Suite 315
Hopewell Junction, New York 12305
Plaintiff, *pro se*

**GIRVIN & FERLAZZO, P.C.**         **PATRICK J. FITZGERALD, III, ESQ.**
20 Corporate Woods Boulevard     **THOMAS H. FISHER, ESQ.**
Albany, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 7, 2025, attorney Peter C. Lomtevas ("Plaintiff") commenced this action *pro se* against the City of Schenectady, New York (the "City"); Corporation Counsel Maxine Barasch; and Mayor Gary McCarthy (collectively, "Defendants"). *See* Dkt. No. 1. The original complaint set out three causes of action: (1) national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) disability discrimination and retaliation under the

1

Americans with Disabilities Act of 1990 ("ADA"); and (3) defamation in violation of New York state law. *See id.* at ¶¶ 67-107. Plaintiff claimed that Defendants discriminated and retaliated against him while he worked for the City, and that Defendant McCarthy defamed him in the press. *See id.* Defendants moved to dismiss the complaint on September 9, 2025. *See* Dkt. No. 10. On October 21, 2025, after the response deadline had passed, Plaintiff opposed the motion in a three-page affirmation and claimed he was not notified of the motion's filing until he manually checked his Public Access to Court Electronic Records account. *See* Dkt. No. 12. Defendants did not file a reply. Because Plaintiff received no automatic notification or correspondence from Defendants regarding the motion's filing, he believed Defendants had failed to litigate the action. *See id.* According to Plaintiff, on October 10, 2025, he attempted to submit a letter seeking leave to move for default judgment. *See id.* The Court did not receive that submission until Plaintiff filed a copy on November 9, 2025. *See* Dkt. No. 15.

On April 23, 2026, after ensuring that Plaintiff could file electronically as an attorney admitted in this District, the Court permitted Plaintiff to file a belated response to Defendants' motion.[1] *See* Dkt. No. 16. The Court denied Plaintiff's letter request for leave to move for default judgment. *See id.* On May 8, 2026, Plaintiff opposed Defendants' motion and cross-moved for leave to amend his complaint. *See* Dkt. No. 17. Plaintiff provided a proposed amended complaint along with his motion, which alleges new facts regarding the substance of a state-court foreclosure action involving the City and asserts two new claims: (1) First Amendment free speech violations pursuant to 42 U.S.C. § 1983; and (2) unlawful termination under the New York

---

[1] The Court made this allowance as an exercise of special solicitude, even though attorneys representing themselves are not guaranteed the same degree of special solicitude as non-attorney *pro se* plaintiffs. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021).

State Human Rights Law. *See* Dkt. No. 17-2. Defendants opposed the cross-motion on May 15, 2026. *See* Dkt. No. 18.

Defendants' motion to dismiss and Plaintiff's cross-motion for leave to amend are now before the Court. For the reasons explained below, Defendants' motion is granted, and Plaintiff's cross-motion is denied.

## II. BACKGROUND

The following facts are derived from Plaintiff's complaint and proposed amended complaint. *See* Dkt. Nos. 1, 17-2. "Plaintiff is a first generation American with Russian ancestry" and speaks English as a second language. Dkt. No. 1 at ¶¶ 23-24; Dkt. No. 17-2 at ¶¶ 24-25. He began working in the City's Law Department as its Deputy Corporation Counsel on February 20, 2024. *See* Dkt. No. 1 at ¶¶ 15, 21, 26; Dkt. No. 17-2 at ¶¶ 16, 22, 27. At that time, Plaintiff alleges that he had "more than twenty years of civil practice experience in U.S. state and federal courts." Dkt. No. 1 at ¶ 26; Dkt. No. 17-2 at ¶ 27. As Deputy Corporation Counsel, Plaintiff "[wrote] pleadings, motions, and appear[ed] in the local courts." Dkt. No. 1 at ¶ 27; Dkt. No. 17-2 at ¶ 28. He alleges that Defendants never expressed concerns about his work until May 10, 2024, when they forced him to choose between resignation and termination. *See* Dkt. No. 1 at ¶¶ 22, 28; Dkt. No. 17-2 at ¶¶ 23, 29. Plaintiff states that Defendants "constructively dismissed" him from employment. Dkt. No. 1 at ¶ 22; Dkt. No. 17-2 at ¶ 23.

Plaintiff's claims arise from his work on a foreclosure action involving the City. *See* Dkt. No. 1 at ¶ 29; Dkt. No. 17-2 at ¶ 30. After the opposing party filed a motion, Plaintiff alleges that he started drafting a response that was tailored to the issues raised. *See* Dkt. No. 1 at ¶¶ 30, 33; Dkt. No. 17-2 at ¶¶ 31, 35. Plaintiff claims Defendant Barasch revised the draft and expanded it considerably, but later allowed Plaintiff to continue working on the version he had started. *See*

3

Dkt. No. 1 at ¶¶ 34, 36; Dkt. No. 17-2 at ¶¶ 37, 39.  According to Plaintiff, Defendant Barasch tried to misrepresent caselaw by manipulating his draft.[2]  *See* Dkt. No. 17-2 at ¶¶ 35-37, 40-43. On May 9, 2024, when the draft was finished, Defendant Barasch allegedly prevented Plaintiff from filing it because he refused to incorporate additions from a colleague in the Law Department.  *See* Dkt. No. 1 at ¶ 37; Dkt. No. 17-2 at ¶ 40.  Plaintiff alleges that on the following day, Defendant Barasch and the colleague "imposed upon [P]laintiff the choice of voluntarily resigning or being fired."  Dkt. No. 1 at ¶ 39; Dkt. No. 17-2 at ¶ 44.  Plaintiff claims that Defendants knew about his linguistic background because he publicly spoke Russian with another coworker on numerous occasions.  *See* Dkt. No. 1 at ¶ 65; Dkt. No. 17-2 at ¶ 72.  He alleges that Defendants "brazenly attack[ed] [him] for his writing style" and forced him out of his position because he speaks English as a second language.  Dkt. No. 1 at ¶¶ 40, 73-74; Dkt. No. 17-2 at ¶¶ 45, 80-81.

Plaintiff also states, *inter alia*, that Defendants discriminatorily prevented him from speaking with outside agencies and departments without Defendant Barasch's supervision, controlled when he could file court documents, ostracized and shunned him, imposed an organizational structure that usurped him of his Deputy Corporation Counsel role, and improperly subordinated him to other employees.  *See* Dkt. No. 1 at ¶ 78; Dkt. No. 17-2 at ¶ 85. Simultaneously, Plaintiff alleges that Defendant Barasch discriminated against him by making herself unavailable as a supervisor.  *See* Dkt. No. 1 at ¶ 78; Dkt. No. 17-2 at ¶ 85.  Moreover, he claims Defendant Barasch told him that she heard he "was posting anti-government material on

---

[2] Plaintiff's cross-motion and proposed amended complaint provide substantive discussion of the foreclosure action involving the City.  *See* Dkt. No. 17-1 at 12-16; Dkt. No. 17-2 at ¶¶ 30-45.  The merits of the foreclosure action are not before this Court.  Thus, while the Court acknowledges Plaintiff's new factual allegations, it does not analyze them in detail.

social media." Dkt. No. 1 at ¶ 47; Dkt. No. 17-2 at ¶ 54. Plaintiff, a United States Army veteran, *see* Dkt. No. 1 at ¶ 7; Dkt. No. 17-2 at ¶ 8, reminded Defendant Barasch of his military service and stated that he "never posted anything anti-government on any social media[,]" Dkt. No. 1 at ¶ 47; Dkt. No. 17-2 at ¶ 54.

Plaintiff filed a whistleblower action against Defendants in state court on August 20, 2024, alleging that they fired him for reporting ethical violations in the Law Department. *See* Dkt. No. 1 at ¶¶ 41, 43-46, 49-50, 53; Dkt. No. 17-2 at ¶¶ 46, 48, 50-53, 60; Dkt. No. 18-3. Those ethical violations included potential conflicts of interest, "breaches of procedure[,]" and billing errors. Dkt. No. 1 at ¶¶ 45-46, 49-50; Dkt. No. 17-2 at ¶¶ 52-53, 56-57. The state trial court dismissed the action, and Plaintiff appealed. *See* Dkt. No. 1 at ¶¶ 54, 58; Dkt. No. 17-2 at ¶¶ 61, 65. The Appellate Division, Fourth Department, affirmed the dismissal. *See* Dkt. No. 17-2 at ¶ 66; Dkt. No. 18-3. Although not discussed in Plaintiff's proposed amended complaint, he appealed again to the New York Court of Appeals. *See* Dkt. No. 18-6 (showing, as an exhibit to Defendants' reply to the cross-motion, Plaintiff's motion for leave to appeal to the Court of Appeals). News outlets reported on the state-court whistleblower case, and Plaintiff alleges that Defendant McCarthy defamed him by telling journalists he was a "poor hire" and "bad hire." Dkt. No. 1 at ¶¶ 55-56; Dkt. No. 17-2 at ¶¶ 62-63.

On February 20, 2025, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No. 1 at ¶ 62; Dkt. No. 17-2 at ¶ 69. He claimed Defendants discriminated against him on the basis of age, race, and sex. *See* Dkt. No. 1 at 19; Dkt. No. 17-2 at 34. On March 24, 2025, while the EEOC investigation was ongoing, counsel for Defendants sent the EEOC a letter describing Defendants' position. *See* Dkt. No. 1 at 25-27; Dkt. No. 17-2 at 35-37. The letter is attached to Plaintiff's complaint and proposed amended complaint as an

exhibit.  *See* Dkt. No. 1 at 25-27; Dkt. No. 17-2 at 35-37.  Defense counsel stated that Plaintiff repeatedly "failed to adequately perform his duties as Deputy Corporation Counsel[,]" and in April 2024, Plaintiff drafted an affirmation which "was littered with grammatical errors and lacked adequate legal support, requiring substantial revisions."  Dkt. No. 1 at 26; Dkt. No. 17-2 at 37.  According to Defense counsel's letter, when Defendant Barasch and a non-party colleague gave Plaintiff substantive feedback, Plaintiff "disregarded the proposed edits and directly refused the instructions of Corporate Counsel Barasch[,]" then resigned.  Dkt. No. 1 at 26-27; Dkt. No. 17-2 at 36-37.

Contrarily, Plaintiff claims he "was performing his job in a manner that was consistent with [Defendants'] legitimate governmental expectations."  Dkt. No. 1 at ¶ 77; Dkt. No. 17-2 at ¶ 84.  He also asserts that, based on Defense counsel's characterization of Plaintiff's work as "littered with grammatical errors," Defendants viewed him as having "an intellectual or mental disability."  Dkt. No. 1 at ¶ 91; Dkt. No. 17-2 at ¶ 121.  Plaintiff alleges that Defendants could have accommodated his purported disability by having a coworker or supervisor correct his grammatical errors, but failed to do so.  *See* Dkt. No. 1 at ¶¶ 92-93, 97; Dkt. No. 17-2 at ¶¶ 122-23, 127.

Citing insufficient evidence, the EEOC ceased its investigation and issued a right-to-sue letter on May 12, 2025.  *See* Dkt. No. 1 at 18-24; Dkt. No. 17-2 at 28-34.  Those documents are attached to Plaintiff's complaint and amended complaint as exhibits.  *See* Dkt. No. 1 at 18-24; Dkt. No. 17-2 at 28-34.  Neither the complaint nor the amended complaint mentions any subsequent EEOC charge concerning national origin or disability discrimination.

### III. DISCUSSION

**A.      Legal Standards**

6

### *1. Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim[,]" *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.

Although *pro se* litigants' filings are subject to liberal construction and "'held to less stringent standards than formal pleadings drafted by lawyers[,]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), "this allowance does not normally extend to a lawyer representing himself," *Borowski v. U.S. Customs & Border Prot.*, 718 F. Supp. 3d 280, 284 n.2 (W.D.N.Y. 2024) (citing *Bank v. Sirlin*, 830 Fed. Appx. 690, 690 (2d Cir. 2020) (summary order)); *see Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021)

("[T]his Court does not give special solicitude to pro se litigants who are themselves attorneys"). Because Plaintiff is an attorney admitted to practice law in this District, the Court holds his pleadings to the same standards as counseled pleadings.

### 2. *Motion to Amend*

Although a proposed amended complaint would "supersede[] the original complaint, it does not necessarily moot a pending motion to dismiss." *Crider v. McGrath*, No. 9:25-CV-629, 2026 WL 550006, *5 (N.D.N.Y. Feb. 27, 2026) (citing *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)). "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman v. Covidien Sales, LLC*, No. 13-CV-6486, 2014 WL 7404071, *2 (S.D.N.Y. Dec. 31, 2014) (quoting FED. R. CIV. P. 15(a)(2)) (other citations omitted). Accordingly, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Leave to amend need not be granted if amendment would be futile, and "[w]hen assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6)." *O'Brien v. City of Syracuse*, No. 5:22-CV-948, 2024 WL 4252052, *2 (N.D.N.Y. Sept. 20, 2024) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)). In other words, "when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under [Rule] 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim[.]" *Milanese*, 244 F.3d at 110 (citation omitted).

"[W]hen faced with an amended complaint, [courts] may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the

8

amended pleading." *Pettaway*, 955 F.3d at 303 (citations omitted).  "In deciding which approach to take, courts consider the nature of the amendment and whether the defendants had adequate opportunity to respond to the proposed amended complaint." *Crider*, 2026 WL 550006, at *5 (citing *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 274 (N.D.N.Y. 2012); *Capuano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:23-CV-1556, 2025 WL 890489, *2 (N.D.N.Y. Mar. 24, 2025)).  "[B]ecause Defendants have responded to Plaintiff's cross-motion and proposed amended complaint with substantive legal arguments, . . . the Court considers the motion to dismiss and subsequent briefing in light of the proposed amended complaint[.]"  *Id.* (citations omitted).

**B.    Failure to Exhaust EEOC Remedies for Title VII and ADA Claims**

Defendants argue that Plaintiff's national origin and disability claims under Title VII and the ADA must be dismissed because Plaintiff failed to exhaust his administrative remedies.  *See* Dkt. No. 10-1 at 8.  In response, Plaintiff argues both that "Title VII does not require exhaustion" and that his EEOC complaint of race discrimination exhausted his administrative remedies on the national origin discrimination claim.  Dkt. No. 17-1 at 18.  The cross-motion does not address exhaustion of administrative remedies for the disability discrimination claim.

"Generally, in New York, filing a charge with the EEOC or the New York Division of Human Rights is an essential requirement to maintain[] an action in federal court under the ADA or Title VII." *Herzog v. McLane Ne., Inc.*, 999 F. Supp. 274, 275 (N.D.N.Y. 1998) (citing *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 692-94 (2d Cir. 1998)).  Failure to file an administrative charge normally precludes judicial relief.  *See id.* (citing *Butts*, 990 F.2d at 1401).  In some situations, however, if a plaintiff files an EEOC charge and

9

later brings a lawsuit with claims absent from the charge, those new claims may be permitted "if they are 'reasonably related' to the initial charge." *Id.* (quoting *Butts*, 990 F.2d at 1401); *see Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).  The Second Circuit has recognized three circumstances where the "reasonably related" doctrine may apply: "(1) loose pleading; (2) retaliation for filing an EEOC charge; and (3) similar subsequent incidents of discrimination." *Herzog*, 999 F. Supp. at 275-76 (citing *Butts*, 990 F.2d at 1402-03).

Plaintiff's EEOC charge, *see* Dkt. No. 1 at ¶ 62; Dkt. No. 17-2 at ¶ 69, claimed discrimination and retaliation on the basis of age, race, and sex, but not national origin or disability, *see* Dkt. No. 1 at 19; Dkt. No. 17-2 at 34.  He does not claim that Defendants retaliated against him for filing the EEOC charge.  Moreover, because Plaintiff's employment with the City ended in May 2024, nearly nine months before he filed the EEOC charge, *see* Dkt. No. 1 at ¶ 22; Dkt. No. 17-2 at ¶ 23, there is no indication that this lawsuit is based on discriminatory incidents occurring after the charge was filed.  Thus, unless Plaintiff's national origin and disability claims are reasonably related to the claims in the EEOC charge under the loose pleading exception, they must be dismissed for failure to exhaust administrative remedies.

Under the loose pleading exception, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation" arising from the charge. *Deravin*, 335 F.3d at 200-01 (citation and internal quotation marks omitted).  To that end, courts focus their analysis on the factual allegations of discriminatory conduct in the EEOC charge. *See id.* at 201 (citations omitted).  For example, the Second Circuit has acknowledged that "even in the absence of an express linkage between race and national origin, the specific facts alleged by a plaintiff in his or her EEOC complaint may suggest both forms of discrimination, so

10

that the agency receives adequate notice to investigate discrimination on both bases." *Id.* at 202. To illustrate, the Second Circuit explained that "allegations by an African-American employee that employees of Irish descent are receiving preferential treatment implicitly suggests some form of potential racial discrimination in addition to an illegitimate preference premised on national origin." *Id.*  However, the Second Circuit has been clear that "[b]ecause '[a]n assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin,' raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination." *Id.* at 201 (quoting *Dixit v. N.Y.C. Dep't of Gen. Servs.*, 972 F. Supp. 730, 734 (S.D.N.Y. 1997)).

Plaintiff has not substantively responded to Defendants' exhaustion argument with any clarification on why the race, age, or sex discrimination allegations in the EEOC charge would also have notified the agency of a need to investigate language-based national origin or disability claims.  He has not pled the contents of his EEOC charge, provided the Court with a copy of the charge, or set forth facts concerning the conduct underlying his claims of age, race, and sex discrimination.  His cross-motion quotes excerpts from the EEOC charge as follows:

> "I am a 65-year-old, white, male, military veteran.  I worked for Respondent for approximately 3 months from on or about February 20, 2024, to on or about May 10, 2024.  My last position was Deputy Corporation Counsel for the City of Schenectady.
> . . .
> I believe that I have been subjected to this hostile, offensive, intimidating work environment with an exclusionary DEI mindset, and discharged, because of my sex (male), race (white, Caucasian), and age (65 years old) in violation of Title VII of the Civil Rights Act (Title VII) of 1964 as amended and The Age Discrimination in Employment Act (ADEA)."

Dkt. No. 17-1 at 7.  The excerpt does not mention or allude to Plaintiff's linguistic abilities or Russian ancestry.

11

Regarding national origin and disability, Plaintiff alleges before this Court that he "is a first generation American with Russian ancestry" who speaks Russian as a first language and English as a second language. Dkt. No. 1 at ¶¶ 23-24; Dkt. No. 17-2 at ¶¶ 24-25. Without further details of the EEOC charge's substance, the Court cannot infer with any degree of specificity whether the conduct underlying the age, race, and sex discrimination claims is reasonably related to the conduct underlying the national origin and disability claims. Furthermore, Plaintiff bases his national origin and disability claims on remarks associated with his English grammar and characterizes Defense counsel's letter—which was written *after* Plaintiff filed his EEOC charge— as a first-time admission of Defendants' reasons for ending his employment. *See* Dkt. No. 1 at ¶¶ 63, 65-66; Dkt. No. 17-2 at ¶¶ 70, 72-73.

Consequently, the Court cannot conclude that Plaintiff's EEOC charge reasonably notified the agency of a need to investigate potential national origin and disability discrimination. *Cf. Dixit*, 972 F. Supp. at 735 (finding that, because the plaintiff's self-identification as "Asian Indian" in his EEOC charge could be construed to connote either race or national origin, his EEOC charge of national origin discrimination also satisfied the exhaustion requirement for a Title VII race discrimination claim). For this reason, the loose pleading exception is unsatisfied, and Plaintiff's Title VII and ADA claims are dismissed for failure to exhaust administrative remedies.

**C.      First Amendment Free Speech Claim**

Plaintiff's proposed amended complaint asserts a new cause of action under § 1983 for First Amendment free speech violations. *See* Dkt. No. 17-2 at ¶¶ 100-14. Plaintiff alleges that Defendants violated his constitutional rights by challenging his legal analysis in the foreclosure action and firing him. *See id.* ¶¶ 107-14. Defendants do not specifically address this new claim in

their reply to the cross-motion. Rather, they argue broadly that the Court should dismiss Plaintiff's proposed amendments because they are prejudicial and futile. *See* Dkt. No. 18 at 8. The Court may deny leave to amend on futility grounds "if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim[.]" *Milanese*, 244 F.3d at 110 (citation omitted).

A public employee's First Amendment free speech rights are markedly diminished when he speaks pursuant to his official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114-16 (2d Cir. 2011). In *Garcetti*, a prosecutor informed his supervisors about misrepresentations in an affidavit used to obtain a search warrant. *See Garcetti*, 547 U.S. at 413-14. The prosecutor claimed he experienced retaliation for reporting the problems with the affidavit, and eventually sued the district attorney for First and Fourteenth Amendment violations. *See id.* at 415. The Supreme Court held that no constitutional violation occurred because "[the prosecutor's] expressions were made pursuant to his duties as a calendar deputy." *Id.* at 421. The Supreme Court emphasized that the prosecutor reported the issues as part of the work he was employed to do, and "[t]he fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id.* at 421-22.

The Supreme Court recognized that "[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Id.* at 422-23. Under this framework, *Garcetti* expressly rejects the prospect of a constitutional cause of action for managerial discipline when a public

13

employee speaks pursuant to his official duties.  *See id.* at 424, 426; *Weintraub v. Bd. of Educ. of the City Sch. Dist. of N.Y.C.*, 593 F.3d 196, 201 (2d Cir. 2010) (citing *Garcetti*, 547 U.S. at 421).

Allowing Plaintiff's First Amendment claim to survive would contravene *Garcetti*.  The proposed amended complaint alleges that Plaintiff spoke pursuant to his official duties as the Deputy Corporation Counsel for the City of Schenectady—a public employee—when handling the foreclosure action.  *See* Dkt. No. 17-2 at ¶¶ 16, 107-12 (identifying Plaintiff's role with the City as a "government job" and discussing his handling of the foreclosure action pursuant to that employment).  Nowhere does the proposed amended complaint allege or insinuate that Plaintiff's speech occurred in his capacity as a private citizen.  *Garcetti* preserves public employers' ability to regulate their employees' official speech without running afoul of the First Amendment, *see Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Garcetti*, 547 U.S. at 422-23); *Gotfryd v. City of Newburgh*, No. 24-CV-1039, 2025 WL 973040, *1 (2d Cir. Apr. 1, 2025) (summary order) (quoting *Garcetti*, 547 U.S. at 421), which, based on the face of the proposed amended complaint, is what occurred here.  Thus, the proposed free speech claim is dismissed as futile.

**D.    Supplemental Jurisdiction Over State Law Claims**

Plaintiff raises two state law claims in his proposed amended complaint: (1) unlawful termination under New York Executive Law § 296(7), which is part of the New York Human Rights Law; and (2) defamation.  *See* Dkt. No. 17-2 at ¶¶ 92-99, 130-36.  Defendants argue that the Court should decline to exercise supplemental jurisdiction over the defamation claim, *see* Dkt. No. 10-1 at 12-13, and that the doctrine of collateral estoppel precludes the Court from deciding the issue of whether Plaintiff was unlawfully terminated, *see* Dkt. No. 18 at 4-5.  Plaintiff argues that supplemental jurisdiction over the defamation claim is proper because it shares the same

14

underlying facts as the federal claims. *See* Dkt. No. 17-1 at 22-23. Because Defendants made their collateral estoppel argument in reply to the cross-motion, Plaintiff has not responded to it.

"Federal courts may exercise supplemental jurisdiction over 'claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Chompupong v. City of Schenectady*, No. 1:17-CV-929, 2021 WL 1758803, *3 (N.D.N.Y. May 4, 2021) (quoting 28 U.S.C. § 1367(a)). "Disputes form part of the same case or controversy . . . when they derive from a common nucleus of operative fact." *Id.* (citation and internal quotation marks omitted). A district court may decline supplemental jurisdiction for several statutorily enumerated reasons, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Courts must consider judicial economy, convenience and fairness to the parties, and comity in deciding whether to exercise supplemental jurisdiction. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citations omitted).

Because all federal claims in this action have been dismissed, the Court declines to exercise supplemental jurisdiction over the defamation and Human Rights Law claims. *See Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006); *Lall v. N.Y.C. Hous. Auth.*, No. 24-CV-3237, 2025 WL 2962954, *2 (2d Cir. Oct. 21, 2025) (quoting *Kolari*, 455 F.3d at 122).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 10) is **GRANTED**; and the Court further[3]

**ORDERS** that Plaintiff's cross-motion for leave to file an amended complaint (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's proposed amended complaint (Dkt. No. 17-2) is accepted for filing and **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 4, 2026
     Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] Plaintiff's Title VII and ADA claims are dismissed with prejudice for failure to exhaust administrative remedies. *See Penird v. Better*, No. 5:19-CV-1146, 2021 WL 3077853, *9 & n.2 (N.D.N.Y. July 21, 2021); *Nieman v. Syracuse Univ. Off. of Hum. Res.*, No. 5:12-CV-732, 2013 WL 2445098, *5-6 (N.D.N.Y. June 5, 2013).  The First Amendment free speech claim is dismissed with prejudice because it is futile. *See Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The state law claims are dismissed without prejudice for lack of jurisdiction. *See Chompupong*, 2021 WL 1758803, at *3.

16